NORMAN BEVER, Appellee, v. JOHN SWECKER, Appellant,
    and CHARLES SWECKER, Executor of the Estate of A.
    Swecker, Deceased, Garnishee, at Suit of PLAINTIFF v.
    JOHN SWECKER, Defendant, also Appellant.

**Discharge in bankruptcy:** EFFECT: JUDGMENTS. The taking and
1   appropriating of plaintiff's property without his consent, is an
    unlawful and wilful injury to property, and a judgment for the
    value thereof is not released by a discharge in bankruptcy.

**Same:** MALICIOUS INJURY. The taking, carrying away and appro-
2   priation of another's property without his consent is a " mali-
    cious " injury to the property, within the meaning of the bank-
    ruptcy act.

*Appeal from Poweshiek District Court.*—HON. W. G. CLEM-
ENTS, Judge.


WEDNESDAY, JUNE 10, 1908.


GARNISHMENT proceedings to subject certain property
to the payment of a judgment held by plaintiff against John
Swecker.   Chas. Swecker, executor of the estate of A.
Swecker, was garnished under execution, and he answered
that he held in his possession and under his control property
of John Swecker to the value of $1,800.   The defendant and
the garnishee moved to discharge the garnishment.   This
motion was overruled, and judgment was rendered against
the garnishee.   The defendant and the garnishee appeal.—
*Affirmed.*


*Tom H. Milner,* for appellants.

*Talbott & Talbott,* for appellee.

DEEMER, J.— November 15, 1905, plaintiff obtained judgment for something like $425 against defendant, John Swecker. This judgment was for some cattle which it was claimed that defendant took from plaintiff without his knowledge and consent, and appropriated to his own use. On December 5, 1905, defendant was declared a bankrupt by the United States District Court, and on January 29, 1906, was discharged as such bankrupt. A. Swecker died testate in July, 1906, and the money and property now held by the garnishee came to defendant through the said A. Swecker. In the motion to discharge the garnishee, the garnishee and the defendant pleaded the discharge in bankruptcy as the ground for such motion.

The question we have for decision upon this appeal is this: Did the discharge in bankruptcy operate as a satisfaction of plaintiff's judgment? Among other things the 1. DISCHARGE IN BANKRUPTCY: effect: judgments. bankruptcy law provides that a discharge releases all of a bankrupt's provable debts except (1) taxes; (2) liabilities for obtaining property by false pretenses or false representations, or for unlawful and malicious injuries to the person or property of another, or for criminal conversation. See Bankruptcy Act July 1, 1898, chapter 541, 30 Stat. 544 (U. S. Comp. St. 1901, 3418), as amended by Act Feb. 5, 1903, chapter 487, section 17, 32 Stat. 800 (U. S. Comp. St. Supp. 1907, 1033). Under the original act judgments for willful and malicious injuries to the person or property of another were not released. Courts, of course, will look behind the judgment to discover and determine the nature of the liability. Was the judgment in this case for the unlawful and malicious injury to the property of the plaintiff? This is the pivotal question in the case. That the act of defendant in taking the cattle was unlawful there can be no question; but was it " malicious " as that term is used in the bankruptcy act? The only showing in addition to that heretofore stated regarding the nature of defendant's liability is

that plaintiff commenced suit to recover the value of the cattle which resulted in the judgment upon which the execution issued. As all forms of action are abolished in this State, it is often difficult to tell whether the remedy sought is trespass, case, trover, or detinue. But there still remain certain landmarks to be resorted to in order to determine the nature of the action.

The action of trover proceeded upon the fiction that the defendant found the property and thereafter converted it to his own use, and generally was brought where defendant came into possession of the property rightfully. A demand was necessary therefor before suit was brought in order that the action would lie. The action of trespass involved the idea of the violation of a possessory right, as well as forceful damage. Unless the right of possession was somehow violated or invaded, the action of trespass would not lie. 3 Street's Foundations of Legal Liability, 234–236. And suit could only be maintained against the immediate wrongdoer. The action of case would lie at common law for what was known as secondary trespass; that is to say, in cases where the act itself directly produced the wrong, the action was trespass, but where the act itself did not directly produce the injury, but the damage resulted as a consequence and not directly from the trespass, the action was trespass on the case. 3 Street on Foundations of Legal Liability, 252, 253. If the act complained of was simply a negligent one, trespass would not lie, but case would. As stated by Street, if a person willfully causes a direct and immediate injury to another, trespass was the only available remedy. Street, 265. In the action of trespass the proper measure of damages was the value of the property. Street, 237. And property was ascribed to the defendant for the purpose of holding him liable for the value of the goods. These distinctions are recognized and pointed out in *Moses v. Arnold,* 43 Iowa, 187, wherein it is held that the tortious taking of property which has not been sold by the wrongdoer will not support an aver-

ment of contract either express or implied. The action which resulted in the judgment in this case was not case or trover, but purely trespass, the injury being to plaintiff's possession, and the remedy being to recover the value of the property taken. It was then for an unlawful and willful injury to property.

The only remaining inquiry is: Was the injury to the property " malicious " as that term is used in the bankruptcy act? In *McChristal v. Clisbee,* 190 Mass. 120 (76 N. E. 511

2. SAME: mali-     3 L. R. A. (N. S.) 702), it is held that term, cious injury.     as used in the law now under consideration, means nothing more than that disregard of duty which is involved in the intentional doing of a willful act to the injury of another. And this is the rule of the Supreme Court of the United States. See *Tinker v. Colwell,* 193 U. S. 473 (24 Sup. Ct. 505, 48 L. Ed. 754). It is scarcely necessary to say that the taking and carrying away of the property of another is an injury to that property. If authority be needed, *Northern Railway v. Carpenter,* 13 How. Prac. (N. Y.) 222, is a sufficient citation. The distinctions we have pointed out are well set forth in *Burnham v. Pidcock,* 33 Misc. Rep. 65 (66 N. Y. Supp. 806, 5 Am. Bankr. Rep. 42). We are satisfied that the judgment in this case was for willful and malicious injury to the property of plaintiff. Aside from this, however, the bankruptcy act as amended relates to liabilities for willful and malicious injuries to the property of another. The claim need not be reduced to judgment. If it be merged in a judgment, we go to the nature of the liability to determine the question of release. There is no doubt we think that the liability in this case was for willful and malicious injury to property as those terms are used in the bankruptcy act. The injury or wrong was just as malicious as an assault and battery upon the person would have been and in such cases it is universally held that the bankrupt is not released. *U. S. v. Lunt,* 1 Spr. (U. S.) 311 (Fed. Cas. No. 15,643) ; *Razor v. Kinsey,* 55 Ill. App. 605 ; *In re Cola-*

*luca* (D. C.) 133 Fed. 255; *Sanderson v. Hunt,* 116 Ky. 435 (76 S. W. 179); *McDonald v. Brown,* 23 R. I. 546 (51 Atl. 213, 58 L. R. A. 768, 91 Am. St. Rep. 659).   Moreover, if the liability was in tort and the tort could not be waived, the debt was not provable in the bankruptcy proceedings.

The order denying the motion to discharge is correct, and the judgment must be and it is *affirmed.*