In the Matter of EMILY COLLIS, Judgment Creditor, against PETER COLLIS, Judgment Debtor.

Supreme Court, Special Term, Monroe County, February 14, 1945.

**718**

*Baglin & Hamilton* for judgment debtor.

*Chamberlain, Page & D'Amanda* for judgment creditor.

CRIBB, J. This is an application by the judgment debtor, Peter Collis, to vacate an order to examine him in supplementary proceedings upon a judgment taken against him in Supreme Court, and for a further order to cancel of record such judgment under section 150 of the Debtor and Creditor Law by reason of the judgment debtor's discharge in bankruptcy.

The judgment debtor and the judgment creditor entered into a marriage ceremony on the 20th day of April, 1918. At the time of this ceremony the judgment creditor was the wife of one Antonio Petrucelli, who was then living and whose marriage with her had not been annulled or dissolved.

On March 15, 1933, the judgment debtor and the judgment creditor executed an alleged separation agreement by the terms

of which the former agreed to pay to the latter $8,500 on certain terms " as and for her support and maintenance ". Thereafter Peter Collis, the judgment debtor, brought an action in the Supreme Court to annul the marriage with Emily Collis, the judgment creditor, and on the 10th day of May, 1933, obtained an interlocutory decree of annulment by reason " of the existence of the prior marriage of the defendant Emily Calogianes (also known as Emily Collis) and which was in full force and effect at the time of the marriage of the parties hereto ". This decree automatically became final at the expiration of three months from the 10th day of May, 1933. The said Peter Collis defaulted in making payments under the said agreement and the said Emily Collis sued him in the Supreme Court and on the 11th day of June, 1940, docketed a judgment against him for the entire unpaid balance payable under the terms of said agreement in the sum of $2,043.25. Thereafter and on or about the 7th day of October, 1940, Peter Collis filed a voluntary petition in bankruptcy. The judgment of Emily Collis, judgment creditor, was duly scheduled in the bankruptcy proceeding. She appeared therein and litigated the question of the lienability of her judgment by virtue of an execution and levy against certain personal property of the bankrupt which came into the possession of the trustee. The bankrupt received his discharge in bankruptcy on the 3d day of December, 1942. Notice of the application for his discharge was given to Emily Collis as well as to other creditors and the discharge was not opposed. The question of the lienability of her judgment was determined adversely to her by the bankruptcy court. Thereafter and on the 25th day of October, 1944, the judgment creditor, Emily Collis, obtained an order from the Supreme Court directing the bankrupt, Peter Collis, to appear and be examined in supplementary proceedings. He now seeks to vacate that order and to cancel of record the judgment on the ground that it has been discharged by reason of his discharge in bankruptcy.

Counsel for the judgment creditor cites many authorities illustrative of the rule against the collateral impeachment of judgments and insists that the judgment debtor, Peter Collis, by this proceeding seeks to impeach the judgment taken against him by Emily Collis upon his default in making payments under their so-called separation agreement. It seems this argument is not well founded. Peter Collis by his acts has recognized and admitted the judgment to be valid in all respects. A collateral attack on a judgment has been defined as " an attempt to impeach the judgment by matters dehors the record, in an action

other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree; an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings." (34 C. J., Judgments, § 827.) However, it scarcely seems that the inclusion of a judgment in the schedule of liabilities in a bankruptcy proceeding is an attack upon such judgment, but if it is, such an attack is made in a proceeding provided by law for such a purpose. By the bankruptcy proceeding, as a matter of fact, the bankrupt does not question the validity of the judgment but only seeks to be relieved from the payment of such portion thereof as may remain unpaid after crediting thereon all dividends, if any, as paid by the trustee in bankruptcy.

Therefore, the only question to be decided on this motion is whether the judgment taken by Emily Collis against the judgment debtor was of a character provable in bankruptcy and therefore dischargeable. The court will look behind a judgment in order to ascertain whether the claim upon which it was founded was of such a nature. (*Bever* v. *Swecker,* 138 Iowa 721.) The character of a liability as one dischargeable in bankruptcy is not lost by being reduced to judgment. (*Badger* v. *Jordan Marsh Co.,* 256 Mass. 153.)

The alleged separation agreement recites the fact of the marriage, that they " cohabited together as man and wife until May, 1932, and have since been living separate and apart " that no issue was born of said marriage, and that " difficulties have arisen which render it undesirable for the parties to longer live together and they are desirous of entering into a permanent separation agreement." After providing that the parties should thereafter live separate and apart, the agreement provided terms for the disposition of real property owned by either or both of the parties, and a further provision that Peter Collis would pay to Emily Collis " as and for her support and maintenance, and in lieu of any and all other claims ", the sum of $8,500, $500 to be paid on execution of the agreement and the balance in monthly payments. In part consideration of the execution of the agreement Emily Collis released any real or personal property which Peter might thereafter acquire from any and all claims which might accrue to her " by reason of the

marital relation existing between the parties." Paragraph 5th of the agreement, upon which counsel opposing this motion lays great stress, reads as follows:

" 5th. Party of the second part further AGREES that she will not contest any action for annulment which the party of the first part may bring against her — it being distinctly understood and agreed, however, that the terms of this agreement shall survive any decree entered or made in any action for annulment, or any other marital action brought by either of the parties hereto against the other.

" It is distinctly understood and AGREED between the parties hereto that this agreement shall not in any way operate as a bar for any action commenced by either party for the annulment of the marriage entered into between the parties on the 24th day of April, 1918."

It is obvious from the above-quoted paragraph 5th of the agreement that at the time of its execution both of the parties anticipated that an action for annulment was to be commenced, and it is most reasonable to suspect that each knew upon what grounds such action would be based, i.e., that she, Emily Collis, had a husband living when she married Peter.

Counsel for the judgment creditor strenuously urges that the liability upon which she obtained judgment was one for the support and maintenance of herself as the wife of the judgment debtor, and therefore not dischargeable in bankruptcy under section 17 of the Bankruptcy Act (U. S. Code, tit. 11, § 35). In support of this position he argues that, by the terms of the separation agreement, the judgment debtor, having admitted his marriage and cohabitation with the judgment creditor, and having agreed to pay her $8,500 for her support, and that the terms of the agreement should survive any annulment action, may not now be heard in denial of its provisions and is estopped from now saying that by reason of a proceeding which *he* took (the annulment action) the entire nature of the agreement and judgment rendered upon it has been altered. The difficulty with this argument is that whatever the parties may have said, done or subscribed to is of no avail in determining their status as a result of the marriage ceremony entered into by them in 1918 when she at the same time had a husband living — a fact established by the subsequent decree of the court in the annulment action. The law steps into such a situation and determines the question without regard to the intent of the parties. Section 6 of the Domestic Relations Law provides that " a marriage is *absolutely void*, if contracted by a person whose husband or wife by a former marriage is living, unless either:

1. Such former marriage has been annulled or has been dissolved *  *·  *  ;

2. Such former husband or wife has been finally sentenced to imprisonment for life;

3. Such former marriage has been dissolved pursuant to section seven-a of this chapter.''

The facts of the instant case come squarely within the provisions of this section. The marriage of the parties was void *ab initio* (*Pettit* v. *Pettit*, 105 App. Div. 312) and could not be ratified by any subsequent acts of the parties. While the agreement executed by the parties in 1918 was substantially in the form commonly used by husband and wife seeking to live separately and apart from each other and was called a '' separation agreement,'' it did not and could not ratify or validate the marriage which was void in its inception. (*McCullen* v. *McCullen*, 162 App. Div. 599.) The law as to absolutely void marriages and the status of the parties concerned is too well established to require further discussion.

In every action for separation the primary fact to be proved is an existing marriage between the parties (*Fischer* v. *Fischer*, 254 N. Y. 463, 466) and therefore any contract liability for support and maintenance of a wife must be based upon a *valid* marriage in order to fall within the exception from dischargeable liabilities in bankruptcy as provided by section 17 of the Bankruptcy Act (U. S. Code, tit. 11, § 35). The agreement upon which Emily Collis took judgment against Peter Collis in this case was not of that character because she was not his wife. He was never liable for her support because of the void marriage. The agreement upon which the judgment was obtained obligated him to pay $8,500 for the support of a woman not his wife and therefore was only a voluntary obligation assumed by him, and not an involuntary liability under the common law for the support of a wife. (See *In Re Lo Grasso*, 23 F. Supp. 340; *Wintrode* v. *Connors*, 67 Ohio App. 106.) It follows that the agreement upon which the judgment was obtained by the judgment creditor was a pure voluntary contractual obligation to pay money and was released by the judgment debtor's discharge in bankruptcy.

All of the cases cited by counsel in his brief in support of non-dischargeability, to wit, *Tinker* v. *Colwell* (193 U. S. 473), *In Re Ridder* (79 F. 2d 524), *Audubon* v. *Schufeldt* (181 U. S. 575), *Schlessinger* v. *Schlessinger* (39 Col. 44) and *Dunbar* v. *Dunbar* (190 U. S. 340, affg. 180 Mass. 170) are distinguishable from the instant case in that they deal with claims made by the lawful

wife, and although some of them are contractual in form, because arising from separation agreements they are actually simply enforcing the common-law liability of a husband to support his wife, which liability is incorporated into a separation agreement based upon a valid marriage.

The motion to cancel and discharge of record the judgment in question (Debtor and Creditor Law, § 150) and to vacate and set aside the order directing the examination of the judgment debtor in supplementary proceedings is granted.

Let an order enter on notice accordingly.