**Philip J. McNELLIS [1] et al., Plaintiffs,**

**v.**

**Isadore RAYMOND,[1] Defendant.**

**No. 65–CV–63.**

United States District Court,
N. D. New York.

Jan. 19, 1971.

---

1. Since the submission of this case a Successor-Trustee has been appointed in place of Plaintiff-Trustee McNellis and has been substituted as plaintiff; the defendant Raymond has died and his executor has been substituted in his place. However, for the sake of convenience, I will continue to refer to McNellis as Trustee and Raymond as defendant.

Smith, Sovik, Terry, Kendrick, Mc-Auliffe & Schwarzer, Syracuse, N. Y., for plaintiffs; Laurence F. Sovik, Syracuse, N. Y., of counsel.

Love, Balducci & Scaccia, Syracuse, N. Y., for defendant; Dante Scaccia, Syracuse, N. Y., of counsel.

## MEMORANDUM-DECISION and ORDER

PORT, District Judge.

This is one of a number of proceedings instituted in the state and federal courts by the Trustee in Bankruptcy of Donald Potter to recover payments made by Donald Potter to various lenders of money to Donald, his father, Jackson M.

Potter, and to Potter Securities Corporation, each having been adjudicated a bankrupt on May 28, 1963. Recovery is sought in some instances of interest paid in excess of the legal rate (excess interest), and in others for all principal, legal and excess interest. This action centers on substantial sums loaned by the defendant Raymond to Donald Potter, Jackson Potter, and to Potter Securities.

The history of the case, and for the most part the pertinent facts, are set forth in McNellis v. Raymond.[2]

The action was originally tried to the court before Hon. William H. Timbers, Chief Judge of the District of Connecticut, sitting by designation in this district. Judge Timbers, in effect, afforded the plaintiff separate trials for the recovery of money repaid on loans made to Potter Securities[3] and for those made to Donald Potter.[4] He referred to the first trial (loans to Potter Securities) as an action based upon "the ground that such payments were made without consideration and therefore were transfers in fraud of the bankrupt's creditors;"[5] he designated the second (loans to Donald) as the "trial on the usury cause of action."[6]

Judge Timbers dismissed the claim based on loans to Potter Securities,[7] holding that usury did not apply to loans to the corporation, and that there was sufficient nexus between Donald and Potter Securities to infer that "Donald was not a volunteer in making the payments in question to Raymond"[8] and to conclude that the transfers were *not* in defraud of creditors since they were supported by "valuable consideration."[9] The dismissal of this claim was affirmed.[10]

---

2. 287 F.Supp. 232 (N.D.N.Y.1968), 304 F.Supp. 1172 (N.D.N.Y.1969), aff'd in part and rev'd in part, 420 F.2d 51 (2d Cir. 1970).

3. This claim was alleged in plaintiff's supplemental complaint.

4. These claims were alleged as two causes of actions in the original complaint; the first seeking recovery of "excess interest" and the second, all repayments of principal, legal and "excess interest."

5. McNellis v. Raymond, 287 F.Supp. 232, 234 (N.D.N.Y.1968).

6. McNellis v. Raymond, 304 F.Supp. 1172, 1173 (N.D.N.Y.1969).

7. The cause of action alleged in the supplemental complaint.

8. McNellis v. Raymond, 287 F.Supp. 232, 238 (N.D.N.Y.1968).

9. *Id.* at 235–236.

10. McNellis v. Raymond, 420 F.2d 51 (2d Cir. 1970).

Without reaching the merits, Judge Timbers dismissed the claims based on repayments of allegedly usurious loans to Donald [11] as time-barred under the one year statute of limitations for claims to recover usurious interest.[12]

Confining its holding only to the statute of limitations, the Court of Appeals reversed [13] and remanded for further proceedings, leaving it "to the district court to determine whether a new trial is called for on those actions or whether additional findings, with or without the further taking of evidence, will suffice." [14] On remand, the trial judge was instructed that the "[f]indings should include just how much money was in fact loaned by Raymond directly to Donald Potter individually or to Potter Real Estate, how much interest was charged, and how much of that interest, if any, was usurious." [15]

Under date of July 13, 1970, a pretrial order was filed incorporating a stipulation of the parties that the proceedings on remand be heard and decided by me "upon the transcript of and the exhibits received on the trials in this case held before Hon. William H. Timbers, * * and without the further taking of testimony." [16]

Having examined the transcript and exhibits received on the trials before Judge Timbers, I conclude that the plaintiff is entitled to judgment in the sum of $15,601.70 with interest from February 8, 1965. See Ruderman v. United States, 355 F.2d 995 (2d Cir. 1966).

This decision and the appendix hereto constitute the findings of fact and conclusions of law. All the findings and conclusions in Judge Timbers' [17] decisions are adopted and incorporated herein except those inconsistent with any in this decision or with the opinion of the Court of Appeals in McNellis v. Raymond.[18]

The plaintiff is entitled to a judgment in his favor in the sum of $15,601.70 with interest from February 8, 1965 and costs upon the findings set forth in the appendix hereto.

## BACKGROUND

This remand is concerned solely with loans from Raymond to Donald and to the Potter Real Estate Company.[19] Loans to Potter Securities were disposed of as not in defraud of creditors by that part of Judge Timbers' judgment which was affirmed. Loans to Jackson Potter formed no part of the plaintiff's complaint. To put the evidence in focus, it will probably help to backtrack.

Upon an examination of the Bankrupt's records by the Trustee, it appeared that 294 checks in the total sum of $582,637.90, had been drawn on the accounts of Potter Real Estate Company and made payable to Raymond. Using this as a jumping off point, the Trustee initiated his original action. Raymond, in his answer and in his answer to interrogatories, claimed that the loans were made to Potter Securities Corporation or to other corporations controlled by Potter, and consequently, usury would not avoid them.

The Trustee, assuming that these allegations of the defendant made his claim based upon a fraudulent transfer practically invulnerable, embraced the allegations, seemingly without regard to their genuineness, and on the first trial before

---

11. The first two causes of action set forth in the original complaint.

12. McNellis v. Raymond, 304 F.Supp. 1172, 1175. See McNellis v. Raymond, 420 F.2d 51, 54 n. 4 (1970).

13. McNellis v. Raymond, 420 F.2d 51 (2d Cir. 1970) (Hays, J. dissenting).

14 Id. at 55.

15. Id.

16. Pretrial Stipulation and Order, Filed July 13, 1970.

17. McNellis v. Raymond, 304 F.Supp. 1172 (N.D.N.Y.1969); McNellis v. Raymond, 287 F.Supp. 232 (N.D.N.Y.1968).

18. McNellis v. Raymond, 420 F.2d 51 (2d Cir. 1970).

19. The assumed name under which Donald carried on his real estate business.

Judge Timbers, he did not offer proof of loans to Donald.[20]

On the second trial before Judge Timbers and on the remand, the Trustee was obliged to do an about-face, since lack of such proof would be fatal to his remaining claims. It is against this background that the record on which it has been stipulated I am to decide the case was built.

While it was not essential to Judge Timbers' decision to find any facts going to the merits of the remanded claims, because his dismissal was based on the statute of limitations, he nevertheless, was obliged to and did find facts with reference to the elements of a fraudulent transfer on the first trial. He found all the essential elements of a fraudulent conveyance claim to have been established by the plaintiff except the fourth designated essential element, i. e. "[t]hat the transfers were made *without fair consideration.*" [21] Since the part of the judgment based on these Findings and Conclusions was affirmed,[22] I feel bound by them. To eliminate any doubt, however, that I intend these Findings and Conclusions to apply herein, I also specifically find and conclude that all the elements of a fraudulent transfer, except fair consideration which will be treated later, existed.

The only factual issues to be determined on the remand relate to alleged loans from Raymond to Donald—whether they were usurious and if so, the effect of the usury on the question of fair consideration.

## THE LOANS

The defendant Raymond advanced money to Donald, Potter Real Estate Company, Jackson Potter, and Potter Securities Corporation over a number of years. Transactions took the form of unsecured loans, mortgage loans, the purchase at a discount of real estate commissions earned but not paid, and in at least one instance the purchase at a discount of payment due Potter Securities Corporation under an agreement cancelling a lease.

The unsecured loans were evidenced by notes or more generally by a postdated check or a series of postdated checks.

The money was advanced by Raymond in the form of a check or checks drawn on one of his personal checking accounts, by cash, or by checks to his order, received by him in the course of his business and endorsed by him to the borrower, or by a combination of these.

Most loan transactions were entered in Potter's books and records and recorded the amount actually received from Raymond, plus an additional amount recorded as "deferred interest;" as indicated, a note or postdated check or series of postdated checks totalling the sum of these figures was given to Raymond as evidence of the loan. As the note or checks were paid, the amount was properly credited to the payment of the "deferred interest" or principal of the loan. The "deferred interest" was the amount agreed upon by Jackson Potter and Raymond as interest for the use of the money. The amount of interest agreed to be paid varied depending upon the circumstances existing at the time the loan was made. In some instances, in the event the loan was not paid when due, or where there was no "deferred interest" recorded at the time of the advance, an additional bonus or interest charge was made. The interest charge was not computed in percentages but was determined in dollar amounts. In every instance in which a recovery is permitted, the amounts of interest agreed upon

---

20. In spite of Raymond's contention that all loans were to Potter Securities, and for reasons which do not clearly appear, Raymond produced a number of checks from him to Donald Potter. The production of these checks, after failing to disclose their existence in response to in-terrogatories, formed the basis on which Judge Timbers granted the second trial.

21. McNellis v. Raymond, 287 F.Supp. 232, 237 (N.D.N.Y.1968).

22. McNellis v. Raymond, 420 F.2d 51, 54 (2d Cir. 1970).

and collected far exceed the legal rate of interest.

All transactions relating to Donald Potter, Potter Real Estate Company, Jackson Potter, or Potter Securities Corporation were recorded in one set of books maintained by Potter Real Estate Company. Potter Real Estate Company was the only entity maintaining a bank account. The transactions were shown on the books insofar as they related to loans by Raymond without any distinction as to whether the loans were made to Potter Securities Corporation, Jackson, Donald, or Potter Real Estate Company. Under the circumstances, it was necessary in most instances to look elsewhere to determine to whom a loan was made or with whom Raymond had conducted the particular transaction.

Except for mortgage transactions, which form no part of this case, the loans were initiated by Jackson, generally through a phone call to Raymond. The amounts to be loaned, together with the amount of interest or bonus, and the duration of the loan were determined in that conversation. The money was advanced by Raymond as previously indicated. When a Raymond check was given to cover the advance in whole or in part, the check was prepared by Jackson Potter or one of his bookkeepers and signed by Raymond, who professed an inability to read, except figures.

The name of the payee was filled in in accordance with the particular need at the time. That is, if Potter Securities Corporation was in need of the money, or if Jackson Potter was in need of the money, the payee would be either of them. Otherwise, the payee would be Donald Potter or Potter Real Estate Company.

Although Raymond testified that his instructions were that all of his checks and all of his loans were to be to Potter Securities, I do not credit that testimony.

It clearly appears to be fabricated to meet the demands of his defense. As a fact, there was no discussion as to whom the loan was being made. Raymond relied upon and adopted Jackson's choice of borrower with the exception of the mortgage loans to Potter Securities, which loans were arranged through Raymond's attorney.

Thus while it is possible to determine, from an examination of the Potter books, loans made by Raymond and to distinguish between mortgage loans, unsecured loans, and the purchase of commissions at a discount, it is not possible in most instances to determine from the books alone whether Potter Securities Corporation, Donald Potter (Potter Real Estate Company), or Jackson Potter was the borrower. On the basis of the testimony, the barren records are completely untrustworthy in this respect.

Under the circumstances, a picture of the transactions etched in fine lines and considerable detail would have been helpful. However both parties, apparently feeling it to their advantage, painted with a broad brush which did more to obscure than clarify.

This deficiency in proof was remedied by the introduction into evidence by the defendant of a number of checks drawn on his accounts, or of corporations controlled by him, to Donald Potter, Jackson Potter, Potter Securities Corporation, and Potter Real Estate.[23] In spite of the lack of designation in the records of the person to whom the loan was made, these checks, considered in conjunction with the records, sufficiently establish that certain loans hereinafter specified were in fact made to Donald Potter or Potter Real Estate Co. as distinguished from Potter Securities Corporation and Jackson Potter.[24] Checks to the order of Potter Securities Corporation and Jackson Potter, from which loans to them might be inferred, have been eliminated as not within the issues.

23. Exhibits A, D, E, F, G, H, I, K1 thru K48.

24. See Appendix which indicates the Exhibit number forming the basis of specific loans to Donald Potter or Potter Real Estate Co.

## THE QUESTION

Is Donald Potter's Trustee entitled to recover payments of interest "in excess of 6% per annum" [25] made on numerous loans to Donald Potter from December 30, 1957 through 1962 [26] on the grounds that "said loans were usurious and void" and therefore the payment of said excess interest was "without consideration and in violation of the Debtor and Creditor Law of the State of New York and the Acts of Congress relating to Bankruptcy;" or, is the Trustee entitled to recover "all payments thereon, both principal and interest" on the grounds that "said loans were usurious and void" and were therefore "without consideration and in fraud of said creditors of said Donald S. Potter?" [27]

## DECISION

### GROUNDS FOR RECOVERY

■■ The Bankruptcy Act provides a number of remedies to the trustee.

Section 70(a) (6) vests in the trustee the bankrupt's "rights of action arising upon contracts, or usury * * *." [28] Under this section the trustee acquires causes of action which the bankrupt may have against a creditor on a usurious loan, unless State law limits the availability of the cause of action to the debtor-bankrupt personally. [29]

The cause of action the trustee gets under Section 70(a) (6) is derived from New York General Obligations Law § 5–513(1). [30] A claim based on this section would be valueless to the trustee herein, since it would be time-barred by the built-in one year statute of limitations of that section. [31] Although this section could not support plaintiff's claim independently, it forms a substantial and necessary prop to the claim and merits later discussion.

The remedy afforded by the federal statutory counterpart of the Uniform

---

25. This is alleged to be the sum of $51,091.-06. Plaintiff's Original Complaint, First Cause of Action, Para. 13.

Each of the portions of this paragraph set off by quotation marks has been quoted from plaintiff's complaint.

26. Although paragraph 13 of the original complaint alleges that "During 1959, 1960, 1961, and 1962, Defendant made numerous usurious loans to Donald S. Potter * * *," the record discloses no specific objection to the loans prior to 1959 on the ground that they were not within this allegation. Neither does the defendant argue this in his brief. Accordingly, the complaint is amended to conform to the proof.

27. Principal and interest is alleged to be in the sum of $582,637.90 for which judgment is demanded. Plaintiff's Original Complaint, Second Cause of Action, Para. 16.

28. 11 U.S.C. § 110(a) (6) (1964), Bankruptcy Act § 70(a) (6).

29. Under New York Law, a debtor may recover property given as security on a usurious loan or restrain the foreclosure of same without tendering interest or principal; the trustee, however, to obtain the same equitable relief, must first tender principal and lawful interest. *See* Wheelock v. Lee, 64 N.Y. 242 (1876);

New York Credit Men's Ass'n v. Manufacturers Discount Corp., 186 Misc. 756, 60 N.Y.S.2d 2 (Sup.Ct.1945), aff'd mem., 270 App.Div. 838, 61 N.Y.S.2d 375 (1st Dep't), motion for leave to appeal denied mem., 270 App.Div. 935, 62 N.Y.S. 2d 843, motion for leave to appeal dismissed per curiam, 296 N.Y. 615, 68 N.E. 2d 888 (1946), aff'd mem., 298 N.Y. 512, 80 N.E.2d 660 (1948). *See also* De Korwin v. First National Bank of Chicago, 275 F.2d 755 (7th Cir.), cert. denied sub nom. Jones v. Kaufman, 364 U.S. 824, 81 S.Ct. 61, 5 L.Ed.2d 53 (1960); Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253, cert. denied, 287 U.S. 620, 53 S.Ct. 20, 77 L.Ed. 539 (1932).

30. N.Y.Gen.Obligations Law § 5–513(1) (McKinney Supp.1970), derived without substantive change from N.Y.Gen.Bus. Law § 372, repealed Sept. 27, 1964 by N.Y.Gen.Obligations Law § 19–101 (McKinney 1964).

31. This built-in one year statute of limitations was deleted from § 5–513(1), effective July 1, 1969. N.Y.Gen.Obligations Law § 5–513(1) (McKinney Supp.1970). Currently, the one year statute of limitations in actions to recover an interest overcharge appears in the C.P.L.R. See N.Y.Civ.Prac.Law and Rules § 215(6) (McKinney Supp.1970).

Fraudulent Conveyance Act [32] is also time-barred by a one year limitations period and therefore requires no further discussion.

The remedy which affords the plaintiff relief is Section 70(e) of the Bankruptcy Act.[33] This section provides, in substance, that a transfer which, under applicable state or federal law, is fraudulent as against or voidable by any creditor having a provable claim against the bankrupt, is null and void as against the trustee; [34] the property so transferred is discharged and released from the transfer and, after avoidance by the trustee, passes to the trustee for the benefit of the bankrupt estate.[35] Since the federal adaption of the Uniform Conveyance Act affords no relief, the Trustee must seek his rights and remedies under State law.

The applicable New York law, New York's adaption of the Uniform Fraudulent Conveyance Act, is found in the Debtor and Creditor Law.[36] Section 273 [37] provides that a conveyance made by a person who is insolvent or will thereby be rendered insolvent is fraudulent as to creditors, without regard to actual intent, if the conveyance is made without fair consideration.[38] The ques-

32. 11 U.S.C. § 107(d) (2) (1964), Bankruptcy Act § 67(d) (2). This section provides:
   Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.

33. 11 U.S.C. § 110(e) (1964).

34. 11 U.S.C. § 110(e) (1) (1964), Bankruptcy Act § 70(e) (1) reads:
   A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

35. 11 U.S.C. § 110(e) (2) (1964), Bankruptcy Act § 70(e) (2), which provides:
   All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws.

36. N.Y.Debt. and Cred.Law §§ 270–281 (McKinney 1945).

37. *Id.* § 273, which reads as follows:
   Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

38. The definition of "fair consideration" is found in § 272, which provides:
   Fair consideration is given for property, or obligation,
   a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is

tion of fair consideration in turn revolves around the question of usury under the New York Usury Statute.

The parties appear not to dispute the proposition that the repayment in full of a usurious loan is a conveyance without fair consideration to the extent that the payment exceeds lawful interest. Raymond, relying on dicta in my Memorandum-Decision in In the Matter of Donald S. Potter d/b/a Potter Real Estate,[39] contends that excess interest is not recoverable until the principal of the loan has been repaid in full. While I do not regard that as a correct statement of the law, it is academic in the context of this case, since principal has in fact been repaid on all loans on which recovery of excess interest is granted.

Raymond also contends that the transactions between the parties should be treated as a single continuous loan. Using this concept and crediting himself with unpaid principal on note 34 in Exhibit 49 and unpaid principal on loans N, P, R, and S in Exhibit 51, Raymond claims, "would reduce the overall profit on all transactions reflected in exhibits '49' and '51' to $9,754.79." [40]

The difficulty with defendant's position is that the record does not justify the finding of a single continuous loan. I have found a series of separate loans in various amounts, with varying interest and bonus agreements.

The defendant also argues that since Raymond received back "$81,900.00 less than he parted with" [41] on the Dennison Building Mortgage, "there is not only a lack of 'excess interest' but instead a loss to Mr. Raymond." [42]  This is not only specious but also misleading.  The Dennison Building Mortgage was a Potter Securities Corporation transaction, a rehash of which is inappropriate, because transactions with Potter Securities are controlled by the Court of Appeals decision.[43]  In addition, Raymond foreclosed his mortgage.

Other than the above, the defendant has failed to specifically point out any deficiencies in the plaintiff's computations.[44]  The only contention of the Trustee that requires extended discussion is the claim made in his Second Cause of Action that he is entitled to recover all payments, "both principal and interest," [45] on usurious loans.

Plaintiff cites no binding authority to support this claim.[46]  He argues that since a literal reading of New York General Obligations Law § 5–511(1) [47] provides that a usurious agreement "shall be void," [48] it cannot create a legal liability;[49] consequently the repay-

---

conveyed or an antecedent debt is satisfied, or

   b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

39. 63–BK–752 (N.D.N.Y. March 18, 1966), aff'd sub nom., In Re Potter, 367 F.2d 513 (2d Cir. 1966).

40. Brief for Isadore Raymond, Defendant, p. 3, July 15, 1970.

41. Id., at p. 4.

42. Id.

43. See McNellis v. Raymond, 420 F.2d 51 (2d Cir. 1970).

44. The items disallowed in the Appendix were the result of the court's independent examination of the records and the transcript of the trial.

45. Plaintiff's Original Complaint, Second Cause of Action, Para. 16.

46. However he quotes at length from Broude, Toward a New Fraudulent Conveyance: The Trustee in Bankruptcy and The Usurious Lender, 63 Nw.L.Rev. 331 (1968) in support of this theory.

47. N.Y.Gen.Obligations Law § 5–511(1) (McKinney Supp.1970), formerly N.Y. Gen.Bus.Law § 373, repealed Sept. 27, 1964 by N.Y.Gen.Obligations Law § 19–101 (McKinney 1964).

48. N.Y.Gen.Obligations Law § 5–511(1) (McKinney Supp.1970).

49. Under the Debtor and Creditor Law, a transfer is made for "fair consideration" if it is made to satisfy an "antecedent debt." N.Y.Debt. & Cred.Law §

ment of any part of a usurious loan would be a transfer without fair consideration and recoverable as a fraudulent conveyance.

■ This is an appropriate point at which to pay heed to the admonition that "[t]here is no surer way to misread any document than to read it literally." [50] As construed by the courts, this statute has always meant something less than void.[51] This can be drawn from the language of the statute as well. While the borrower can avoid the entire indebtedness before payment by having the appropriate court "declare the same to be void, and enjoin any prosecution thereon, and order the same [evidence of indebtedness] to be surrendered and cancelled," [52] after repayment, the statute itself limits recovery to "the amount of money so paid * * * above the [legal] rate." [53]

In this respect the New York Statute is similar to the Pennsylvania usury statute which does not declare the obligation void, but rather, provides that "the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate" [54] and permits recovery of such excess as a transfer in fraud of creditors because:

> The payments in question were not for a fair consideration since [the borrower] had no legal obligation to make them and, therefore, could not be satisfying an antecedent debt within the meaning of the statute.[55]

■■ Usury is not unlike the statute of limitations in that the debtor need not avail himself of it;[56] if he wishes to avoid the principal indebtedness, he must assert it as an affirmative defense.[57] Under this state of New York law, the rationale of Central Hanover Bank & Trust Co. v. United Traction Co.,[58] applied to this case, compels the finding and conclusion that the repayments of principal and lawful interest, even on usurious loans, by Donald Potter were made for fair consideration and con-

---

272 (McKinney 1945). A debt is defined as "any legal liability." *Id.* § 270.

50. Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J. concurring opinion), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945).

51. See Lipedes v. Liverpool & London & Globe Ins. Co., 184 App.Div. 332, 171 N.Y.S. 484, 486 (4th Dep't), aff'd 229 N.Y. 201, 128 N.E. 160 (1920), where the court aptly pointed out:
[W]hile the courts have held that a contract tainted with usury was void when that defense was pleaded by the borrower or his personal representatives, they have also continuously held that the word "void," as used in the statute, should be construed as "voidable." * * *.
*See also* cases cited in notes 56–57, *infra.*
It would appear that where the New York legislature and courts truly mean "void," the statute is self executing. *See e. g.* N.Y.Dom.Rel.Law § 6 (McKinney 1964), which declares a bigamous marriage "absolutely void." A marriage void under this section cannot be ratified by the subsequent acts of the parties; nor is there a need for a judicial declaration of voidness. *See e. g.* McCullen v. McCullen, 162 App.Div. 599, 147 N.Y.S.

1069 (1st Dep't 1944); Puffer v. City of Binghamton, 59 Misc.2d 856, 301 N.Y.S.2d 274 (Sup.Ct.1969); In Re Collis, 184 Misc. 717, 53 N.Y.S.2d 316 (Sup.Ct. 1945); Schmidt v. Schmidt, 195 Misc. 366, 90 N.Y.S.2d 747 (Fam.Ct.1949).

52. N.Y.Gen.Obligations Law § 5–511(2) (McKinney 1964).

53. *Id.* § 5–513(1) (McKinney Supp.1970). See also Del Rubio v. Duchesne, 284 App.Div. 89, 130 N.Y.S.2d 572 (1st Dep't 1954).

54. Act of May 28, 1958, P.L. 622, § 2, 41 P.S. § 4.

55. Larrimer v. Feeney, 411 Pa. 604, 192 A.2d 351, 354 (1963).

56. *See* Murray v. Judson & Sands, 9 N.Y. 73 (1853).

57. *See* Long Island Bank v. Boynton, 105 N.Y. 656, 11 N.E. 837 (1887); Lipedes v. Liverpool & London & Globe Ins. Co., 184 App.Div. 332, 171 N.Y.S. 484 (4th Dep't), aff'd 229 N.Y. 201, 128 N.E. 160 (1920). Apparently, avoidance may also be by way of counterclaim. *See* Gibson v. Brown, 171 Misc. 487, 13 N.Y.S.2d 31 (Sup.Ct.1939), aff'd 258 App.Div. 947, 17 N.Y.S.2d 994 (1st Dep't 1940).

58. 95 F.2d 50 (2d Cir. 1938).

sequently are not recoverable by the Trustee as payments made in fraud of creditors.

## OTHER CONTENTIONS

██ The Trustee again raises the question that this court erred in not granting him summary judgment as a sanction against the defendant for failing to satisfactorily answer interrogatories. This is neither the time nor the place for that objection to be heard. That should have been raised on the appeal.

The Trustee loses sight of the fact that Judge Timbers, in granting him a second trial, was applying a sanction because of defendant's conduct. Also, to strike defendant's Exhibits A, D, E, F, G, H, and I, as the Trustee claims should have been done, would leave the Potter records, upon which the Trustee rests his case, in such a state of indefiniteness that the court would be unable to determine which loans, if any, were made to Donald.

The remaining claims of the Trustee evolve around a series of mathematical computations from which he deduces he is entitled to varying and substantial sums. These claims are supported by neither the law nor the facts.

Raymond, in addition to other claims, contends that all transactions had by Raymond or his corporations with any elements of "the Potter complex" should be lumped together, and all debits and credits balanced off; that if this were done, there would be nothing due the Trustee. The major flaw in this claim is simply that the transactions did not, in fact, take that shape.

Raymond's other arguments are addressed to the facts. These have been resolved by the findings and require no further discussion.

This decision shall constitute the findings of fact and conclusions of law.

Judgment shall be entered pursuant to Rule 58, F.R.Civ.P. in favor of the plaintiff, A. Solomon Menter, as Trustee, and against the defendant, Richard N. Ames, Executor of the Estate of Isadore Raymond, Deceased.

## APPENDIX

### FINDINGS

*Re Column A.*

I find the checks from Raymond to Donald Potter and Potter Real Estate Company listed in Column A to corroborate the records setting forth the loans designated in Column B.

*Re Column B.*

I find the loans designated as note number or loan number in Plaintiff's Exhibits 49 and 51 listed in Column B were made on or about the dates set forth in said Exhibits.

*Re Column C.*

I find Raymond loaned and advanced to Donald Potter on the loans in Column B the amounts set forth opposite said loans in Column C.

*Re Column D.*

I find that as to each of the loans listed in Columns B and C Raymond charged and collected from Donald Potter or Potter Real Estate Company the amounts set forth in Column D, pursuant to an agreement (express or implied) with Jackson Potter, acting on behalf of Donald Potter, as interest; in each instance, said interest was usurious. In instances in which no "excess interest" was collected, an entry in this Column is omitted as immaterial.

*Re Column E.*

I find that the amounts set forth in Column E to be the amount of interest in excess of 6% paid by Potter to Raymand on each loan. The repayment of said excess interest by Donald Potter or Potter Real Estate Company to Raymond was without fair consideration and in fraud of creditors.

## OMITTED TRANSACTIONS

The following transactions included in Exhibits 49 and 51 were excluded for the reasons set forth below:

### EXHIBIT 49

*Re Notes #3 and #11*

The proof fails to show that these were loan transactions. They were sales or assignments of commissions at a discount. For Note #3, see Exhibit 3, Journal Page R–2–1–6, Feb. 6, 1958; Exhibit 3, Journal Page D5–1, May 21, 1958; Exhibit 3, Journal Page S–4–1, May 1, 1958. For Note #11, see Exhibit 10 (Loans Payable, Isadore Raymond, Sept. 17, 1958) and Exhibit R.

Charitably, I consider these to have been included as loans in error, since the Trustee states in his Reply Brief at page 4 that "[s]ales of commissions were also excluded because, needless to say, they were not loans."

*Re Note #18*

The proof fails to establish that this was a loan to Donald. In fact, the check in Exhibit K26 is made to the order of Jackson M. Potter.

*Re Note #24*

Plaintiff has failed to establish that this was a loan to Donald. Although Exhibit K28 is in the same amount and the same date as Exhibit 4, Journal Page R11–3, line 31, the latter shows a loan from Herman Dubnoff. Exhibit 10 (Loans Payable Ledger, H. Dubnoff, Nov. 30, 1959) also shows the loan coming from Dubnoff. In fact, in McNellis v. Dubnoff, 63–BK–752, decided today, that loan was found, without objection, to have been made by Dubnoff.

*Re Note #33*

The plaintiff has failed to establish that this was a loan to Donald. There is no check in evidence from which I could infer a loan from Raymond to Donald.

*Re Note #39*

The proof of a loan from Raymond to Donald is insufficient. This loan appears to have been made by Thompson Road Factories, Inc. The check to Donald S. Potter forming the basis of this loan is from Thompson Road Factories, Inc. See Exhibit K47.

### EXHIBIT 51

All loans in Exhibit 51, except M and N, have been omitted because the plaintiff has failed to establish by a fair preponderance of the credible evidence that they were loans to Donald. There are no checks from Raymond to Donald corroborating the records concerning these loans. For example, the basis for Loan Y is Exhibit A, a check from Thompson Road Factories, Inc. The repayment of that note was by Potter check No. 8352 (Exhibit 35, Page 188) which was to the order of Thompson Road Factories, Inc.

### APPENDIX

| A | B | C | D | E |
|---|---|---|---|---|
| Check Exhibit # | Exhibit 49 Note # | | | |
| K1 | 1 | $ 3,000.00 | $ 600.00 | $ 579.06 |
| K2 | 2 | 4,000.00 | 400.00 | 360.40 |
| (a) K9 | 4 | 4,450.00 | 1,000.00 | 962.76 |
| K4 | 5 | 6,000.00 | 1,000.00 | 980.00 |
| K13 | 6 | 10,000.00 | ---- | ---- |
| K5, K10 | 7 | 5,500.00 | 1,100.00 | 1,061.70 |
| (b) K6, K7 | 8 | 7,000.00 | 700.00 | 669.20 |
| K8 | 9 | 2,500.00 | 600.00 | 597.50 |
| K14 | 10 | 3,000.00 | 150.00 | 147.00 |
| K12 | 12 | 4,000.00 | 1,000.00 | 967.20 |
| K15 | 13 | 6,000.00 | ---- | ---- |
| K16, K17 | 14 | 10,000.00 | ---- | ---- |
| K18, K19 | 15 | 12,000.00 | 1,200.00 | 1,132.20 |
| K20 | 16 | 3,000.00 | ---- | ---- |
| K39, K40 | 17 | 17,000.00 | 3,020.00 | 2,573.20 |
| K21 | 19 | 5,000.00 | ---- | ---- |
| K22 | 20 | 6,000.00 | 600.00 | 545.54 |

APPENDIX

| A | B | C | D | E |
|---|---|---|---|---|
| Check Exhibit # | Exhibit 49 Note # | | | |
| (c) K23 | 21 | 9,000.00 | ---- | ---- |
| K24 | 22 | 6,500.00 | 650.00 | 479.80 |
| K27, K29 | 23 | 9,000.00 | ---- | ---- |
| K30 | 25 | 6,000.00 | 200.00 | 186.80 |
| K48 | 26 | 5,000.00 | 150.00 | 139.25 |
| K33 | 27 | 3,600.00 | 36.00 | 34.20 |
| (d) K31, K32 | 28 | 10,300.00 | 1,000.00 | 831.42 |
| K34, K35 | 29 | 7,500.00 | 500.00 | 479.00 |
| K36 | 30 | 7,100.00 | 150.00 | 147.87 |
| K41 | 31 | 8,000.00 | 200.00 | 193.60 |
| K37 | 32 | 8,000.00 | 300.00 | 251.20 |
| K42 | 34 | 9,850.00 | ---- | ---- |
| K45 | 35 | 15,000.00 | 1,750.00 | 1,633.30 |
| K46 | 36 | 24,000.00 | 250.00 | 238.00 |
| K44 | 37 | 13,000.00 | 520.00 | 411.50 |
| K43 | 38 | 5,500.00 | ---- | ---- |
| | Exhibit 51 Loan # | | | |
| (e) E | M | $ 8,000.00 | | |
| F | N | 9,300.00 | | |

$15,601.70

(a) There is insufficient proof that check No. 4823, dated May 29, 1958 in the sum of $100.00 and shown as a payment of interest on this loan should be so treated and is disallowed. *See* Exhibit 2, Journal Page D5–10. This item appears as a payment of principal on Exhibit 47A, reverse side, line 5.

(b) The allocation of $500.00 out of check No. 5992 to interest is not supported by the evidence. Plaintiff's Exhibit 10, (Loans Payable, I. Raymond, Nov. 21, 1958) shows $700.00 allocated to the payment of this note, but does not indicate payment of $500.00 as interest. Plaintiff's Exhibit 4, Journal Page D11–7, Nov. 21, 1958 shows a $1,200.00 payment of principal. Since only $700.00 deferred interest on the loan was owing at the date of payment, and because the $500.00 payment is not explained in the records, I disallow the $500.00 as a payment of interest.

(c) There is insufficient evidence that this transaction constituted a loan. From the entry in Plaintiff's Exhibit 10 (Loans Payable, Isadore Raymond, August 14, 1959) it may more readily be inferred that this transaction was the purchase of commissions.

(d) Raymond is charged with having received check No. 1534, dated May 6, 1960, in the sum of $750.00 as interest on this loan. The journal entry to support the charge is given in Exhibit 49 as Exhibit 4, Journal Page D5–3.

This journal entry shows that check No. 1534 was charged as "escrow deposit." The check itself (Exhibit 35, page 32) indicated that it was a "deposit on account of Stadium Apartments." The interest item is disallowed for failure of proof.

(e) Loan M indicates the payment of $1,000.00 interest on October 13, 1961 by check No. 8239. The payment, according to Exhibit 51 is reflected in Exhibit 4, Journal Page D10–4. An examination of that page fails to disclose any entry for that check. A further examination of Exhibit 4 failed to disclose an entry for this check on any pertinent page of the Exhibit. In this state of the evidence, plaintiff has failed to sustain his burden of proof as to this claimed payment of interest.